# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **THOMAS HAREL JENNINGS, II**, ) | |
| ) | |
| Petitioner, ) | Case No. 7:06CV00604 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Respondent. ) | |

*Thomas Harel Jennings II, Petitioner Pro Se; Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for Respondent.*

Thomas Harel Jennings, II, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West 2006). Upon review of the submissions of the parties and the underlying criminal record in Case No. 1:05CR00021, I find that Respondent's Motion to Dismiss must be granted.

I

Jennings pleaded guilty on June 29, 2005, pursuant to a written plea agreement, to conspiring to manufacture fifty grams or more of a substance or mixture containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841 & 846(b)(1)(B) (West 1999 & Supp. 2007) (Count Four), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c) (West

2000 & Supp. 2007) (Count Five). In paragraph 4 of the Plea Agreement, Jennings stipulated that certain sentencing guideline provisions were applicable to his conduct, giving him a Base Offense Level of 26 on Count Four, based on drug weight, with a three-level increase because of a substantial risk of harm to human life. Paragraph 8 stated: "I am knowingly and voluntarily waiving any right to appeal and am voluntarily willing to rely on the Court in sentencing me." Paragraph 9 stated: "I agree not to collaterally attack the judgment and/or sentence imposed in this case and waive my right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon me by the Court."[1] After questioning the defendant and hearing the government's evidence in support of the plea, I made a factual determination that Jennings's pleas were knowingly and voluntarily made and found him guilty of Counts Four and Five.

---

[1] Paragraphs 8 and 9 both included the following additional statement of understanding: "I agree and understand that if I file any court document (including but not limited to a notice of appeal) seeking to disturb, in any way, the judgment and/or sentence imposed in my case, the United States will be free to take whatever actions it wishes based on this failure to comply with my obligations under the plea agreement."

- 2 -

On October 31, 2005, I conducted a sentencing hearing.[2] Ultimately, I found that Jennings's Base Offense Level was 26, based on drug weight and pursuant to the plea agreement stipulation. Pursuant to the government's agreement, I found that only a two-point enhancement was warranted. With a total Adjusted Offense Level of 28 and a Criminal History Category V, the advisory sentencing guidelines range for Jennings was 130 to 160 months imprisonment. I sentenced Jennings to 130 months imprisonment on Count Four and 60 months imprisonment on Count Five to run consecutive to the sentence on Count Four, to be followed by a five-year term of supervised release. Pursuant to the plea agreement, Counts One, Two, Three, Six and Seven of the indictment were dismissed. Jennings did not appeal.

In his § 2255 motion, Jennings alleges the following grounds for relief:

1. The government's evidence was insufficient to support the guilty plea to Count Five; and

2. The court erred in enhancing Jennings's sentence for his aggravating role in the offense based on facts found by a preponderance of the evidence.[3]

---

[2] After the plea hearing, defense counsel moved to withdraw on the ground that he had misadvised Jennings as to the sentence he would likely face under the plea agreement. I granted the motion to withdraw and appointed new counsel to represent Jennings at sentencing. At the October 31, 2005 hearing, I questioned Jennings fully about the matter and he reconfirmed the plea agreement and stated that he was ready for sentencing.

[3] Jennings apparently believes that his rights were violated under the rule set forth in *United States v. Booker*, 543 U.S. 220, 248-58 (2005). The *Booker* Court found that the federal sentencing guidelines were constitutional only if they were advisory rather than

- 3 -

In his Memorandum in Support of his § 2255 motion, however, Jennings presents other claims, alleging that counsel was ineffective because (i) he allowed Jennings to enter into a plea agreement including a waiver of his right to appeal and his right to bring a § 2255 motion; (ii) he failed to advise Jennings of the consequences of the waiver provision, making the guilty plea unknowing and involuntary; and (iii) he allowed Jennings to plead guilty to a violation of § 924(c) for conduct that did not satisfy the elements of that offense. Respondent has filed a Motion to Dismiss, arguing that pursuant to the provisions in his written plea agreement, Jennings waived his right to bring this § 2255 motion.[4] Jennings has responded to the motion, making the matter ripe for the court's consideration.

II

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and

---

mandatory. Jennings has no *Booker* claim, however, because when he was sentenced in October 2005, the sentencing guidelines were no longer mandatory, consistent with the *Booker* decision.

[4] I note that because Jennings could have raised Claims 1 and 2 on direct appeal, they are procedurally defaulted from collateral review under § 2255. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). Because procedural default is an affirmative defense, however, and the government has failed to raise this defense, I cannot dismiss the claims on this ground.

- 4 -

voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22. If the court determines that petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Id. at 220 (internal quotations and citations omitted). The court in *Lemaster* addressed petitioner's ineffective assistance claims bearing on the validity of the plea. *Id.* at 222-23. After finding that such allegations contradicted petitioner's sworn statements at the plea hearing, the court upheld the validity of the § 2255 waiver and dismissed all claims as waived. *Id.* at 223.

The Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal rights: (1) claims that the sentence exceeds the maximum statutory penalty, (2) claims that the sentence rests on a constitutionally impermissible factor such as race, or (3) claims that defendant was deprived of the assistance of counsel at a proceeding after the entry of the waiver,

- 5 -

such as at sentencing.[5]  *United States v. Attar*, 38 F.3d 727, 732 (4th Cir.1994); *United States v. Marin*, 961 F.2d 493 (4th Cir. 1992); *see also United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005).  Thus, in addition to evaluating the validity of Jennings's guilty plea and waiver of § 2255 rights, I must determine whether each of his § 2255 claims falls within the scope of that waiver.

### III

A. JENNINGS'S VALID GUILTY PLEA AND WAIVER.

Before accepting Jennings's guilty plea on June 29, 2005, I questioned him to ensure that his plea was knowing and voluntary.  Jennings indicated that he was twenty-five years old, had completed the ninth grade in school,[6] could read and write, had never been treated for mental illness or drug abuse, had no current health problems, and was not under the influence of alcohol or of any drug that hampered his ability to understand the proceedings.  He indicated that he had had adequate time to discuss the indictment and the case with his attorney, that he had initialed each page of his plea agreement and had signed it and understood its terms as summarized

---

[5] In *Lemaster*, the court implicitly acknowledged that these discrete claims would also be considered outside the scope of a valid plea agreement waiver of § 2255 rights.  403 F.3d at 220 n.2.

[6] At sentencing, Jennings told the court that he had also gotten his G.E.D.

- 6 -

by the prosecutor. I asked Jennings whether he understood that under the plea agreement, he was waiving his right to appeal his sentence and his right to file a collateral attack on his sentence or his conviction. Jennings indicated that he understood this waiver. He denied that anyone had made any promise to him, outside the provisions of the plea agreement, or otherwise forced him to plead guilty. I reviewed the rights he was waiving by pleading guilty, explained in detail the elements of each charge that the government would have to prove if he went to trial, and heard a summary of the evidence in support of the plea. With one exception,[7] Jennings indicated that he did not dispute any of the facts recited by the prosecutor in support of the plea and that he had no questions of the court. He then pleaded guilty to Counts Four and Five. I found the pleas to be knowing and voluntary, accepted the pleas, and adjudged Jennings guilty of the offenses.

    I find that Jennings entered valid guilty pleas and valid waivers of his right to appeal and his right to bring this collateral attack under § 2255. I specifically questioned Jennings during the plea hearing about the waiver provisions. He indicated that he understood the waivers, the elements of the charges against him, and the consequences of his guilty plea and was voluntarily entering the plea. Moreover,

---

[7] Jennings did object that he never threatened to shoot police as one witness would have testified. (Plea Tr. 18.)

I sentenced him to 190 months, in keeping with the plea agreement for which he bargained and within the statutory limits.

### B. COUNSEL'S ALLEGED ERRORS REGARDING THE PLEA.

All three of Jennings's ineffective assistance claims arguably bear on the validity of his guilty pleas and his plea agreement waivers. In Claims (a)(i) and (a)(ii), Jennings asserts that counsel should not have let him enter into a plea agreement by which he waived his right to bring an appeal or a collateral attack. The record reflects, however, that I specifically advised Jennings about these waivers before he entered his guilty pleas. Moreover, he offers no indication that the benefits he gained through the plea agreement—such as dismissal of five criminal counts, sentence reduction for acceptance of responsibility, a chance to earn a substantial assistance motion for sentence reduction, and stipulation of applicable guideline provisions for sentencing—would have been available to Jennings if he had refused the waiver provisions. Nor does he indicate any possibility that a more comprehensive explanation of § 2255 would have caused him to reject the plea agreement benefits in favor of a jury trial, after which he would almost certainly have been convicted and then sentenced on all seven charges of the indictment, without any of the reductions he received through the agreement. Thus, I cannot find that

- 8 -

Case 7:06-cv-00604-JPJ-mfu   Document 11   Filed 06/07/07   Page 8 of 12   Pageid#: 92

I sentenced him to 190 months, in keeping with the plea agreement for which he bargained and within the statutory limits.

### B. COUNSEL'S ALLEGED ERRORS REGARDING THE PLEA.

All three of Jennings's ineffective assistance claims arguably bear on the validity of his guilty pleas and his plea agreement waivers. In Claims (a)(i) and (a)(ii), Jennings asserts that counsel should not have let him enter into a plea agreement by which he waived his right to bring an appeal or a collateral attack. The record reflects, however, that I specifically advised Jennings about these waivers before he entered his guilty pleas. Moreover, he offers no indication that the benefits he gained through the plea agreement—such as dismissal of five criminal counts, sentence reduction for acceptance of responsibility, a chance to earn a substantial assistance motion for sentence reduction, and stipulation of applicable guideline provisions for sentencing—would have been available to Jennings if he had refused the waiver provisions. Nor does he indicate any possibility that a more comprehensive explanation of § 2255 would have caused him to reject the plea agreement benefits in favor of a jury trial, after which he would almost certainly have been convicted and then sentenced on all seven charges of the indictment, without any of the reductions he received through the agreement. Thus, I cannot find that

counsel's alleged shortcomings in explaining the waiver provisions caused Jennings's guilty plea to be invalid in any respect.

In Claim (a)(iii), Jennings asserts that counsel was ineffective in advising him to plead guilty to Count Five, because Jennings believes he is factually innocent of that offense. Paragraph 1 of the Plea Agreement states that Jennings will plead guilty to "possession of a firearm in furtherance of a drug trafficking crime," which is slightly different wording than the wording of Count Five itself.[8] Jennings faults counsel for failing to advise him that "possession" of a firearm was not enough to support the charge under § 924(c)(1), pursuant to *Bailey v. United States*, 516 U.S. 137 (1995),[9] and that his conduct did not constitute "possession in furtherance of a drug trafficking crime."

The record of the plea colloquy disproves Jennings's assertion that he was not aware of the elements of a § 924(c) offense. First, whether or not counsel advised Jennings of the elements of Count Five, the court did. I specifically informed

---

[8] Count Five of the indictment charged that Jennings "knowingly used and carried during and in relation to, and possessed [a firearm] in furtherance of" a federal drug trafficking crime.

[9] Jennings apparently argues that he has some entitlement to relief under the Supreme Court's 1995 decision in *Bailey*, 516 U.S. at 142-43, which defined "use" of a firearm in § 924(c) as requiring more than mere possession of a firearm. He is mistaken. In 1998, well before his offense conduct, Congress amended § 924(c)(1) to include the possession of a firearm "in furtherance of" a drug trafficking crime, in addition to use or carrying of a firearm. *See* Pub. L. No. 105-386, § 1(a)(1), 112 Stat. 3469, 3469 (1998).

- 9 -

Jennings that for him to be found guilty of Count Five, the government would have to prove that Jennings knowingly possessed the firearm during a drug trafficking crime and that the possession of the firearm "helped to further or advance" the crime; I specifically informed Jennings that proof of mere possession of a firearm was insufficient and that conspiracy to manufacture methamphetamine qualified as a drug trafficking crime. (Plea Tr. 15-16.) Knowing the elements of the offense, Jennings proceeded to plead guilty to it.

Second, based on the government's evidence against Jennings as to Count Five, I cannot find that counsel's advice regarding the guilty plea to Count Five was unreasonable. The prosecutor summarized the evidence against Jennings as follows, in pertinent part:

> [T]he evidence would show that at one of the locations where [Jennings] was cooking methamphetamine on January 13th of 2005 in Washington County, Virginia, that Mr. Jennings was in a location that had a trap door that went down to where the manufacturing process was in place, and that Mr. Jennings, with some other people, on that date heard someone knock on the front door. At that time whoever was at the front door yelled that it was the police. Mr. Jennings grabbed a nine millimeter pistol and ran upstairs to check, and Mr. Jennings returned to the basement, said there was no one at the door . . . . And Mr. Jennings then went back to continue working on making methamphetamine in the basement.
>
> Also, during that same day, after dark that day, Mr. Jennings heard some car doors slam, and he went outside and fired a shot in the

> air with the pistol. He returned to the basement and continued to manufacture methamphetamine.

(Plea Tr. 16-17.) Jennings stated that he did not dispute this evidence. As a reasonable fact finder could determine from this evidence that Jennings possessed a firearm in furtherance of a drug trafficking crime, I cannot find that counsel's advice to plead guilty to Count Five was unreasonable. *See also Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (finding that to prove ineffective assistance bearing on guilty plea, petitioner must show (1) that counsel's performance was unreasonable and (2) that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial").

Based on the foregoing, I conclude that Jennings has not alleged any facts on which to find that his guilty plea and his waiver of his right to bring this § 2255 action are not valid and binding. I also find that his claims clearly fall within the scope of the § 2255 waiver and do not present any of the noted exceptions that would preclude the waiver from being enforced. Accordingly, I will grant the Motion to Dismiss.

## IV

For the stated reasons, I find that Jennings waived his right to bring this action and that none of his claims fall outside the scope of his valid waiver. Therefore, I will grant the Motion to Dismiss. Moreover, I also find it clear from the record that his claims are without merit.

A separate Final Order will be entered herewith.

DATED: June 7, 2007

/s/ JAMES P. JONES
Chief United States District Judge